UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE JEAN DUARTE, | No. 2:19-cv-01019 AC |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 1381-1383f.[1]  For the reasons that follow, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

////

////

---

[1] SSI is paid to financially needy disabled persons. 42 U.S.C. § 1382(a); Washington State Dept. of Social and Health Services v. Guardianship Estate of Keffeler, 537 U.S. 371, 375 (2003) ("Title XVI of the Act, § 1381 *et seq.*, is the Supplemental Security Income (SSI) scheme of benefits for aged, blind, or disabled individuals, including children, whose income and assets fall below specified levels . . .").

1

## I. PROCEDURAL BACKGROUND

Plaintiff applied for supplemental security income on March 31, 2016. Administrative Record ("AR") 170.[2] Plaintiff alleged the disability onset date was December 17, 2014. Id. The applications were denied initially (AR 95-99), and on reconsideration (AR 103-107). On November 29, 2017 ALJ Vincent A. Misenti presided over hearings on plaintiff's challenge to the disapprovals. AR 28-52 (transcript). Plaintiff was present and testified at the hearing. AR 31. She was represented by attorney Jonathan O. Pena. AR 30. Chris Meyers, a vocational expert, also testified at the hearing. Id.

On June 20, 2018, the ALJ issued an unfavorable decision, finding plaintiff "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A). AR 15-22 (decision), 23-27 (exhibits). On April 2, 2019, the Appeals Council denied plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner of Social Security. AR 1-4 (decision).

Plaintiff filed this action on June 3, 2019. ECF No. 1; see 42 U.S.C. §§ 405(g), 1383c(3). The parties consented to the jurisdiction of the magistrate judge. ECF Nos. 7, 9. The parties' cross-motions for summary judgment, based upon the Administrative Record filed by the Commissioner, have been fully briefed. ECF Nos. 16 (plaintiff's summary judgment motion), 19 (Commissioner's summary judgment motion), 20 (plaintiff's response).

## II. FACTUAL BACKGROUND

Plaintiff was born in 1968, and accordingly was 48 years old when she filed her application. AR 170. Plaintiff has at least a high school education and completed training to work as a Nursing CNA and Home Health Aid. AR 218.

## III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld "if it is supported by substantial evidence and if the Commissioner applied the correct legal standards." Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . ..'" Andrews

---

[2] The AR is electronically filed at ECF Nos. 12-3 to 12-14 (AR 1 to AR 768).

1  v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (quoting 42 U.S.C. § 405(g)).

2  Substantial evidence is "more than a mere scintilla," but "may be less than a preponderance." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted). "While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted).

Although this court cannot substitute its discretion for that of the Commissioner, the court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) ("The court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion; it may not affirm simply by isolating a specific quantum of supporting evidence.").

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). However, the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) ("It was error for the district court to affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss").

The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (quoting Stout v. Comm'r, Soc. Sec., 454 F.3d 1050, 1055 (9th Cir. 2006)); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

## IV. RELEVANT LAW

Supplemental Security Income is available for every eligible individual who is "disabled." 42 U.S.C. § 1381a. Plaintiff is "disabled" if she is "'unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment . . ..'" Bowen v. Yuckert, 482 U.S. 137, 140 (1987) (quoting identically worded provisions of 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether an applicant is disabled and entitled to benefits. 20 C.F.R. § 416.920(a)(4); Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003) (setting forth the "five-step sequential evaluation process to determine disability" under Title II and Title XVI). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

20 C.F.R. § 416.920(a)(4)(i), (b).

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, the claimant is not disabled.

Id., § 416.920(a)(4)(ii), (c).

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is disabled. If not, proceed to step four.

Id., § 416.920(a)(4)(iii), (d).

> Step four: Does the claimant's residual functional capacity make him capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Id., § 416.920(a)(4)(iv), (e), (f).

> Step five: Does the claimant have the residual functional capacity perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Id., § 416.920(a)(4)(v), (g).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. 20 C.F.R. § 416.912(a) ("In general, you have to prove to us that you are blind or disabled"); Bowen, 482 U.S. at 146 n.5. However, "[a]t the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can

engage in work that exists in significant numbers in the national economy." Hill v. Astrue, 698 F.3d 1153, 1161 (9th Cir. 2012); Bowen, 482 U.S. at 146 n.5.

## V.  THE ALJ's DECISION

The ALJ made the following findings:

> 1. [Step 1] The claimant has not engaged in substantial gainful activity since March 23, 2016, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Step 2] The claimant has the following severe medically determinable impairments: rheumatoid arthritis; hearing loss; history of left ankle fracture; and obesity (20 CFR 416.920(c)).
>
> 3. [Step 3] The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. [Preparation for Step 4] After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she has the following additional limitations: she can perform frequent bilateral handling and fingering; she can perform occasional climbing of ramps and stairs and crawling; she cannot climb ladders and scaffolds; she can perform frequent balancing, stooping, kneeling, and crouching; she is limited to working in moderately noisy environments; she cannot work at unprotected heights; she must avoid concentrated exposure to moving mechanical parts; and she can occasionally use a telephone to communicate at work.
>
> 5. [Step 4] The claimant has no past relevant work (20 CFR 416.965).
>
> 6. [Step 5] The claimant was born [in] 1968, and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed.  The claimant subsequently changed age category to closely approaching advanced age (20 CFR 416.963).
>
> 7. [Step 5, continued] The claimant has a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. [Step 5, continued] Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).
>
> 9. [Step 5, continued] Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

> 10. The claimant has not been under a disability, as defined in the Social Security Act, since March 23, 2016, the date the application was filed (20 CFR 416.920(g)).

AR 15-22.

As noted, the ALJ concluded that plaintiff was "not disabled" under Section 1614(a)(3)(A) of Title XVI of the Act, 42 U.S.C. § 1382c(a)(3)(A).  AR 22.

## VI.  ANALYSIS

Plaintiff alleges that the ALJ erred in failing to develop the record by obtaining an assessment of her physical limitations from a treating or examining source, and instead relying improperly upon outdated opinion evidence and his own lay interpretation of the medical data. ECF No. 16 at 1.  Plaintiff argues that this central error was aggravated by the ALJ's improper reliance on records of other patients included erroneously in plaintiff's record, and the ALJ's erroneous discounting of plaintiff's subjective complaints.  Id. at 9, 10.

A.  The ALJ Failed to Develop the Record and Relied His Own Lay Interpretation

Plaintiff contends that the ALJ was obligated to develop the record because he relied upon assessments from non-examining physicians, whose opinions were outdated and who did not consider the complete evidence of record.  ECF No. 16 at 7-8.  Plaintiff argues that because the ALJ relied on the opinions of non-examining experts who assessed only three months of treatment records within the relevant period, and because the record apart from this deficient opinion evidence included no functional assessments, the ALJ had a duty to further develop the record.  ECF No. 16 at 8-9.  The court agrees.

"The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's duty to develop the record is triggered by ambiguous evidence or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence.  See Smolen, 80 F.3d at 1288.  "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."

Tonapetyan, 242 F.3d at 1150 (citing Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998), as amended (Jan. 26, 1999)).  Nonetheless, the ALJ's obligation to obtain additional evidence is triggered only when the evidence from the treating medical source is inadequate to determine the claimant's disability.  Thomas, 278 F.3d at 958; Tonapetyan, 242 F.3d at 1150 (holding that ALJs have a duty to fully and fairly to develop the record when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence).  When the ALJ finds support in the record adequate to determine the claimant's disability, he is not required to secure an additional or consultative opinion.  Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

Here, the ALJ considered the opinion evidence of only three physicians: non-examining state agency physicians A. Cepeda, M.D. (AR 71-72), and R. Dwyer, M.D. (AR 83-84), and psychological consultative examiner Michael Cohen, Ph.D. (AR 372-76).  AR 20.  The ALJ assigned "partial weight" to the functional assessments of Dr. Cepeda and Dr. Dwyer, who wrote their opinions in May and August 2016 and concluded that claimant was not disabled.  Id.  The ALJ assigned little weight to Dr. Cohen, who examined the claimant in April 2013, finding the opinion had little relevance to plaintiff's ability to function since March of 2016.  Id.  It is the ALJ's duty to determine the credibility of medical opinions and resolve conflicts in the medical evidence.  Thomas, 278 F.3d at 956–57.

It was appropriate for the ALJ to assign only partial weight to the opinions of the non-examining physicians, because they both reviewed treatment records through June 2016 only.  The medical record that was before the ALJ documented significant medical events after June 2016, including plaintiff's August 23, 2016 emergency room visit for body pain (AR 727), September 29, 2016 emergency room visit for ankle pain and swelling (AR 695-98), October 5, 2016 referral for an orthopedic evaluation for left ankle fracture (AR 649-50), and her October 2016 medication change to various injections (AR 580-83, 585-86, 588).  Significant medical events continued in 2017: plaintiff was prescribed multiple new medications, including certolizumab injections for wrist and hand swelling and Cimzia injections for rheumatoid arthritis.  AR 592-609.  In August of 2017 plaintiff reported increasing neck pain and difficulty with grip, and was prescribed Celexa, ibuprofen 600, and promethazine for rheumatoid arthritis

1  and degenerative joint disease. AR 646-47. By September 21, 2017, plaintiff's treating physician
2  recorded clinical symptoms of fibromyalgia and prescribed Neurontin. In October of 2017
3  plaintiff was given Norco for pain. AR 644. None of these significant events are reflected by
4  records that end in June of 2016, and none were addressed by any medical opinion.

5  Because multiple significant medical events post-dated the reports of Drs. Cepeda and
6  Dwyer, and no other expert reviewed the complete record, the ALJ had a duty to identify the
7  record before him as deficient—and to then develop the record. The opinions of Drs. Cepeda and
8  Dwyer were the only functional assessments in the record, and without them the record was
9  inadequate to allow for proper evaluation. Had the record included other assessments of
10 plaintiff's functional limitations, the ALJ could have relied upon them and no duty to develop the
11 record would be triggered. See, e.g., Guerrero v. Colvin, No. 1:12-CV-1100 GSA, 2013 WL
12 4517915, at *7 (E.D. Cal. Aug. 26, 2013) (finding that the ALJ had no duty to recontact a
13 neurosurgeon for a functional assessment given that the ALJ was permitted to rely on other
14 consultative examinations, which claimant failed to show should be given less weight); Yang v.
15 Astrue, 1:08-cv-00084 GSA, 2010 WL 476022, at *19 (E.D. Cal. Feb. 4, 2010) (holding that in a
16 case in which the administrative record included several functional assessments, there was no
17 duty to recontact a physician for a functional assessment when said physician provided a
18 thorough report that included a mental status examination, diagnosis, and conclusion). But here,
19 there was no opinion evidence from any treating or examining physician. The record was
20 incomplete.

21 Plaintiff further alleges that the ALJ erred by making an independent evaluation and
22 substituting his own lay interpretation of the medical record for that of an expert. ECF No. 16 at
23 8. The Commissioner counters that the ALJ relied on and cited to relevant evidence contained in
24 the entire record. ECF No. 19 at 11. Though an ALJ determines a plaintiff's residual functional
25 capacity as stated in 20 C.F.R. § 416.927(e)(2), an ALJ is not allowed to make medical
26 judgments, but only legal judgments based on medical evidence. Day v. Weinberger, 522 F.2d
27 1154, 1156 (9th Cir. 1975). Barring a few exceptions, an ALJ must have a doctor's opinion of a
28 claimant's functional capacity in order for there to be substantial evidence supporting the

8

1   decision.  Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996)

2   ("With few exceptions, . . . an ALJ, as a layperson, is not qualified to interpret raw data in a

3   medical record.").

4       While the ALJ discussed the medical evidence subsequent to and absent from Dr. Cepeda

5   and Dwyer's functional assessments, such as claimant's left ankle avulsion fracture, arthritis

6   flare-ups, history of chronic ear problems and ear surgeries, and escalation of treatment, he did

7   not reference any functional assessment by a physician who had the opportunity to evaluate the

8   entirety of claimant's medical records.  AR 19-20.  Rather, the ALJ referenced only raw data in

9   the medical record, such as treatment records and diagnostic tests, not a medical doctor's

10  evaluation of the diagnosed impairments on plaintiff's ability to work on a function-by-function

11  basis.  Id.; AR 575-625, 630, 636, 647, 649, 652-53, 682, 691, 695, 727-28, 733, 737.

12      In formulating the RFC, the ALJ thus erroneously relied on his own lay interpretation of

13  plaintiff's testimony and the raw medical evidence in the record.  AR 18-21.  For example, the

14  ALJ recognized that Drs. Cepeda and Dwyer did not address plaintiff's history of hearing loss

15  impairment, but then stated that the RFC "accommodates the claimant's sensorineural hearing

16  loss by limiting her to moderately noisy environments and occasional telephone use."  AR 20.

17  The ALJ did not reference any functional assessment or opinion for this conclusion, but instead

18  cited plaintiff's hospital records showing a history of past ear surgeries and hearing aid use.  AR

19  630, 636.  "[T]he ALJ's RFC determination or finding must be supported by medical evidence,

20  particularly the opinion of a treating or an examining physician."  Banks v. Barnhart, 434 F.

21  Supp. 2d 800, 805 (C.D. Cal. 2006) (citations omitted).

22      For all these reasons, the court finds that the ALJ committed reversible error by failing to

23  develop the record and relying on his own lay interpretation of the medical data.

24      B.  <u>The ALJ Erred in Referencing Other Patients' Medical Records</u>

25      Plaintiff contends that the ALJ's error in failing to develop the record was exacerbated by

26  his reference to medical records that were included in plaintiff's file by error.  ECF No. 16 at 9.

27  In return, the Commissioner argues that this error was harmless because these records were cited

28  among other evidence supporting the ALJ's finding that plaintiff's rheumatoid arthritis was mild

1  to moderate and improved with medical care and weight loss. ECF No. 19 at 12. The court
2  agrees with plaintiff's position.

3  In his decision, the ALJ inadvertently cited to medical records found on AR 421-41 that
4  belong to two patients who are not plaintiff and that do not reference plaintiff or her functioning.
5  AR 19-20. The ALJ cited these misplaced records from Exhibit 5F twice: (1) when asserting that
6  plaintiff has a history of "mild-moderate" rheumatoid arthritis, which has improved with the use
7  of medications, AR 19, and (2) when determining that the record does not show aggravation of
8  her symptoms or health due to increased weight. AR 20. It is undeniable that relying on medical
9  records that do not belong to the claimant is error, especially where the ALJ cited misplaced
10 records in support of an adverse credibility determination. See Lingenfelter v. Astrue, 504 F.3d
11 1028, 1036 (9th Cir. 2007) (holding that once claimant produces objective medical evidence of an
12 underlying impairment and there is no evidence of malingering, the ALJ must give specific, clear
13 and convincing reasons supporting an adverse credibility determination). Defendant's only
14 contention is that the error is harmless.

15 "A decision of the ALJ will not be reversed for errors that are harmless." Burch, 400 F.3d
16 at 679; see Marsh v. Colvin, 792 F.3d 1170, 1173 (9th Cir. 2015) (harmless error analysis applies
17 to an ALJ's failure to mention a treating physician's opinion). "ALJ errors in social security
18 cases are harmless if they are 'inconsequential to the ultimate non-disability determination,'"
19 Marsh, 792 F.3d at 1172–73 (quoting Stout, 454 F.3d at 1055–56). "'[A] reviewing court cannot
20 consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when
21 fully crediting the testimony, could have reached a different disability determination.'" Id.
22 (quoting Stout, 454 F.3d at 1055–56). "'[W]here the circumstances of the case show a substantial
23 likelihood of prejudice, remand is appropriate so that the agency can decide whether re-
24 consideration is necessary. By contrast, where harmlessness is clear and not a borderline
25 question, remand for reconsideration is not appropriate.'" Id. (quoting McLeod v. Astrue, 640
26 F.3d 881, 888 (9th Cir. 2011)) (internal quotation marks omitted).

27 The ALJ's inadvertent citation of the misplaced and irrelevant records undermines the
28 validity of his RFC assessment and thus constitutes reversible error. Defendant argues that the

1  error is harmless because misplaced records in question were "cited amidst other evidence
2  supporting" the ALJ's determination of non-disability.  ECF No. 19 at 12.  Indeed, the citation to
3  incorrect records would be harmless if the ALJ cited other substantial evidence or specific
4  findings supporting the non-disability and adverse credibility determinations.  However, this court
5  has already found that the ALJ did not provide substantial evidence for his determination but
6  relied on functional assessments that failed to address the entirety of plaintiff's medical history
7  and on his own lay interpretation of treatment records after June 2016.  Moreover, though the
8  ALJ's adverse credibility determination fails for other reasons discussed in the following section,
9  reliance on other patients' medical evidence undermines the ALJ's assertion that objective
10 evidence discredits plaintiff's symptom testimony.

11      For these reasons, the court finds that the ALJ's citation of medical records of other
12 patients further undermines the RFC assessment and is not harmless.

13          C.  The ALJ Erroneously Discredited Plaintiff's Symptom Testimony

14      Plaintiff argues that the ALJ exacerbated his error by improperly and arbitrarily estimating
15 how plaintiff's pain would affect her functionality.  ECF No. 16 at 10.  The court agrees.
16 Whether a plaintiff's subjective symptom testimony should be accepted turns on whether the
17 plaintiff produces medical evidence of an impairment that could reasonably be expected to
18 produce the pain or other symptoms alleged.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.
19 1998); Smolen, 80 F.3d at 1281–82; Bunnell v. Sullivan, 947 F.3d 341, 346 (9th Cir. 1991).
20 Further, "[t]he ALJ may not reject subjective symptom testimony . . . simply because there is no
21 showing that the impairment can reasonably produce the *degree* of symptom alleged."
22 Lingenfelter, 504 F.3d at 1035–36 (alterations in original) (quoting Smolen, 80 F.3d at 1282); cf.
23 Reddick, 157 F.3d at 722 ("Once the claimant produces medical evidence of an underlying
24 impairment, the Commissioner may not discredit the claimant's testimony as to the severity of
25 symptoms merely because they are unsupported by objective medical evidence." (citing Bunnell
26 v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991))).  A claimant is not required to "produce
27 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Garrison v.
28 Colvin, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting Smolen, 80 F.3d at 1282).

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter, 504 F.3d at 1035–36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. at 1036 (quoting Bunnell, 947 F.2d at 344). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Id. (citations omitted) (quotation marks omitted).

Here, the ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." AR 19. Accordingly, the first step in the credibility analysis is satisfied. As to the second step, the ALJ did not reference any evidence of malingering. AR 18-21. Thus, the ALJ could only reject the claimant's testimony about the severity of her symptoms based on "specific, clear and convincing reasons for doing so." Lingenfelter, 504 F.3d at 1036. In order to meet the clear and convincing standard, the ALJ must identify what testimony is not credible and what evidence discredits the testimony. Reddick, 157 F.3d at 722; Smolen, 80 F.3d at 1284.

The ALJ found that "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." AR 19. The ALJ separately addressed plaintiff's statements about her rheumatoid arthritis symptoms and her left ankle avulsion fracture and her chronic ear problems. AR 20. The ALJ identified four reasons for discrediting plaintiff's symptom testimony regarding her rheumatoid arthritis: (1) claimant's daily activities that do not demonstrate debilitation or incapacity to use her hands, (2) her reliance "on routine and conservative treatment" and a lack of more "aggressive procedures," (3) diagnostic test results that "are further inconsistent with the degree to which the claimant alleges her impairments debilitate her," and (4) claimant's physical examinations that have largely been normal. AR 19-20.

### 1. Daily Activities

Plaintiff argues that "contrary to the ALJ's assertion, Plaintiff's daily activities do not

contradict her other testimony," and that the ALJ's findings do not contradict the assertion that plaintiff has difficulty using her hands and that she cannot use her hands on a regular and continuing basis for work tasks. ECF No. 16 at 12. The court agrees.

The Ninth Circuit has held that "if a claimant 'is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (alteration in original) (emphasis in original) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). "One does not need to be 'utterly incapacitated' in order to be disabled." Id. (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)) (finding that activities such as walking in the mall and swimming are not necessarily transferable to the work setting with regard to the impact of pain as a claimant may do these activities despite pain for therapeutic reasons). "Disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," and "[o]nly if the level of activity were inconsistent with [the claimant's] claimed limitations would these activities have any bearing on [her] credibility." Reddick, 157 F.3d at 722.

In this case, the ALJ indicated that plaintiff's rheumatoid arthritis "does not prevent her from holding her cigarettes, driving, lifting up to 10 pounds, using utensils, reading 'a lot,' making change in the store, texting, cooking, dressing, and bathing." AR 19. The ALJ further noted that plaintiff made minimal references to hand pain, which validated a restriction to frequent bilateral handling and fingering. Id. The court finds this rationale erroneous for two reasons.

First, the record indicates that though plaintiff did do these activities, she did so on an infrequent and limited basis. She testified that she only smokes two cigarettes daily, drives very infrequently, struggles with shoelaces and thus doesn't wear laces, cooks only once weekly, and needs her mother's help to turn the shower on and to complete most chores, such as mopping, vacuuming, and often times laundry. AR 32, 37, 38. The record does not demonstrate a level of activity that is necessarily inconsistent with the plaintiff's claimed limitations, but rather reflects

13

her efforts to lead a normal life.

Second, the ALJ did not describe how these tasks are transferable to a work setting. When considering a claimant's pain allegations, if the ALJ finds that "despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." Fair, 885 F.2d at 603. "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination." Orn, 495 F.3d at 639 (alteration in original) (quoting Burch, 400 F.3d at 681).

As mentioned, the ALJ failed to account for the infrequent and limited nature of plaintiff's daily activities. The ALJ did not find that plaintiff's daily activities took up a substantial part of her day or discuss how these tasks are transferable to a work setting. AR 18-21. Instead, the record demonstrates that plaintiff is unable to sustain these activities for very long or without substantial breaks. For instance, though plaintiff occasionally does laundry or sweeping, she spends about fifteen to thirty minutes on these chores before resting for a couple hours or days depending on the intensity of her pain. AR 42-43. Given the failure to address the minimal extent of these tasks and whether they are transferable, the ALJ's conclusion that plaintiff's daily activities contradict her allegations regarding the intensity of her pain is not supported by substantial evidence. See, e.g., Orn, 495 F.3d at 639 (holding that because "there is neither evidence to support that Orn's activities were 'transferable' to a work setting nor proof that Orn spent a 'substantial' part of his day engaged in transferable skills," the ALJ's adverse credibility determination was not supported by substantial evidence).

Therefore, the court finds that substantial evidence does not support the ALJ's adverse credibility determination pertaining to plaintiff's daily activities.

### 2. Routine and Conservative Treatment

Plaintiff also contends that the ALJ's characterization of plaintiff's treatment history as "routine and conservative" is erroneous given that her pain and arthritis were treated with narcotic pain medications, steroids, and injections of various medications. ECF No. 16 at 11. In

particular, the ALJ asserted that "the claimant's reliance largely on routine and conservative treatment consisting of medications and Cimzia injections without resort to aggressive procedures underscores the non-disabling nature of her rheumatoid arthritis." AR 20. The court is unconvinced that plaintiff's treatment history discredits her symptom testimony.

The ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" as a factor in weighing a claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008). The ALJ may infer that a claimant's pain is not as all-disabling as reported when there is evidence of minimal and conservative treatment. Id.; see also Parra v. Astrue, 481 F.3d 742, 750–51 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."). Here the ALJ not only suggested that plaintiff's treatment of medications and injections was conservative, but also identified a few "aggressive procedures" that plaintiff failed to pursue, including surgery, use of braces and splints, physical therapy, and use of a cane. AR 20.

The record shows that plaintiff was prescribed Norco and ibuprofen to relieve pain and that she received about nine non-steroidal and steroid injections. AR 538-41, 559, 560-62, 582-83, 588, 592-609, 610-13, 644, 652-53. According to the record, plaintiff's doctors have not suggested the need for surgery, and she has not indicated that she rejected that option. AR 34. Plaintiff contends that characterizing her treatment of prescription pain medication and injections as conservative is erroneous because when plaintiff has received numerous injections on a regular basis, injections are generally not considered conservative treatment. ECF No. 16 at 11. Plaintiff is correct that injections, by themselves, do not constitute conservative treatment. Joanne G. v. Berryhill, No. EDCV 18-0997-JPR, 2019 WL 2303833, at *12 (C.D. Cal. May 29, 2019) ("Injections are also generally not considered conservative, at least not when the plaintiff has received numerous injections on a regular basis.") (citation omitted); see also Hydat Yang v. Colvin, No. CV 14-2138-PLA, 2015 WL 248056, at *6 (C.D. Cal. Jan. 20, 2015).

However, "courts have frequently found that the fact that Plaintiff has been prescribed narcotic treatment or received injections does not negate the reasonableness of the ALJ's finding

that Plaintiff's treatment *as a whole* was conservative, particularly when undertaken in addition to other, less invasive treatment methods." Martin v. Colvin, No. 1:15-CV-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) (emphasis in original) (citation omitted); see also Zaldana v. Colvin, No. CV 13-7820 RNB, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (finding that evidence of treatment including Tramadol, ibuprofen, and "multiple steroid injections" was "a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination because the record reflects that plaintiff was treated on the whole with conservative care for her foot pain with good results and improvement.").

Considering the treatment record as a whole, the court finds that plaintiff's treatment was not conservative. Plaintiff has been prescribed narcotic pain medication and received injections for pain and inflammation but has continued to complain of reoccurrence of symptoms. AR 582-83, 585, 592. She attempted to find relief through various types of injections, as Enbrel injections failed but Humira injections caused a significant burning sensation. AR 585. After several rounds of injections of Cimzia from March to July 2020, AR 592-609, plaintiff was treated for increasing neck pain and difficulty with her grip and continues to try out numerous medications to control her symptoms. AR 646. In regard to the ALJ's assertion that plaintiff has not pursued more "aggressive procedures," the record does not indicate that her doctors suggested that such "aggressive procedures," such as surgical intervention, were an option for plaintiff or would improve plaintiff's condition. "A claimant cannot be discredited for failing to pursue non-conservative treatment options where none exist." Lapeirre-Gutt v. Astrue, 382 F. App'x 662, 664 (9th Cir. 2010).

Accordingly, the court finds that the record does not support a finding that the treatment plaintiff received for her rheumatoid arthritis discredits her pain allegations.

### 3. Objective Evidence – Diagnostic Tests and Physical Examinations

Plaintiff argues that because there is objective evidence that she suffers from severe rheumatoid arthritis, the ALJ is not permitted to discredit her pain allegations "merely because they are unsupported by objective medical evidence." ECF No. 16 at 11. The ALJ discredited plaintiff's pain allegations partly because "[d]iagnostic tests are further inconsistent with the

degree to which the claimant alleges her impairments debilitate her," "physical examinations have largely been normal," and "[c]ontrary to the claimant's assertions of several flare-ups per month, the record reflects only a few instances of significant rheumatoid arthritis flare-ups." AR 19.

Though a lack of medical evidence supporting plaintiff's pain allegations is a factor that the ALJ can consider in his credibility analysis, Burch, 400 F.3d at 681, it is insufficient without more to discredit a plaintiff's symptom testimony. "[T]he Ninth Circuit has repeatedly emphasized that, 'in evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based *solely* on a lack of medical evidence to fully corroborate the alleged severity of pain.'" Ondracek v. Comm'r of Soc. Sec., No. 1:15-CV-01308-SKO, 2017 WL 714374, at *8 (E.D. Cal. Feb. 22, 2017) (alteration in original) (quoting Burch, 400 F.3d at 680); see, e.g., Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("[S]ubjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence . . . ."). In sum, "[a]lthough the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, it is one factor which may be considered with others." Salas v. Colvin, No. 1:13-CV-00429-BAM, 2014 WL 4186555, at *6 (E.D. Cal. Aug. 21, 2014) (citations omitted).

In this case, the court has found that the ALJ's other stated rationales for rejecting plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms were not supported by substantial evidence. Because the absence of objective medical evidence cannot alone support an adverse credibility determination, Burch, 400 F.3d at 681, the court concludes that the credibility finding is not supported by substantial evidence.

D. Remand for Further Consideration is Necessary

For the reasons provided, the ALJ erred by (1) failing to develop the record, and instead relying on his own lay interpretation of the medical record; (2) citing to other patients' medical evidence; and (3) discounting plaintiff's testimony on inadequate grounds. These errors are not harmless, particularly in their cumulative effect, and remand for further proceedings by the Commissioner is therefore necessary. An error is harmful when it has some consequence on the

ultimate non-disability determination.  Stout, 454 F.3d at 1055.  The ALJ's errors in this matter were harmful; correcting them may very well result in a more restrictive residual functional capacity assessment, which may in turn alter the finding of non-disability.

It is for the ALJ to determine in the first instance whether plaintiff has severe impairments and, ultimately, whether she is disabled under the Act.  See Marsh, 792 F.3d at 1173 ("the decision on disability rests with the ALJ and the Commissioner of the Social Security Administration in the first instance, not with a district court").  "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).  Further development of the record consistent with this order is necessary, and remand for further proceedings is therefore the appropriate remedy.

## VII.  CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 16), is GRANTED;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19), is DENIED;

3. The matter is REMANDED to the Commissioner for further proceedings consistent with this order; and

4. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

SO ORDERED.

DATED: September 2, 2020

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE